IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:21-cv-00110-MR-WCM

| | |
|---|---|
| DONNA GARRETT | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| DR. DON TOMAS, in his personal | ) |
| and official capacity as President | ) |
| of Southwestern Community | ) |
| College; DR. THOM BROOKS, in | )    MEMORANDUM AND |
| his personal capacity and official | )    RECOMMENDATION |
| capacity as Executive Vice | ) |
| President of Instruction and | ) |
| Student Services of Southwestern | ) |
| Community College; DR. MITCH | ) |
| FISCHER in his personal capacity | ) |
| and official capacity as Dean of | ) |
| Health Science of Southwestern | ) |
| Community College; WENDY | ) |
| BUCHANAN, in her personal | ) |
| capacity and official capacity | ) |
| as Director of the Nursing Program | ) |
| of Southwestern Community | ) |
| College; and THE TRUSTEES OF | ) |
| SOUTHWESTERN COMMUNITY | ) |
| COLLEGE, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

This matter is before the Court on Defendants' Motion to Dismiss (Doc.

3), which has been referred to the undersigned pursuant to 28 U.S.C. § 636 for

1

the entry of a recommendation. The Motion is fully briefed and is ripe for ruling.

## I.    Relevant Procedural History

On March 1, 2021, Plaintiff Donna Garrett ("Plaintiff") filed her Complaint in the Superior Court of Haywood County, North Carolina. Doc. 1-2.

On April 21, 2021, Defendants removed the case based on federal question jurisdiction. Doc. 1.

The next day, Defendants filed the Motion to Dismiss along with a supporting memorandum. Docs. 3, 4. Plaintiff responded, and Defendants replied. Docs. 5, 7.

On June 30, 2021, the undersigned directed the parties to file supplemental briefing on two topics. Doc. 8.

The parties' supplemental briefs were submitted on July 16, 2021. Docs. 9, 11.

## II.    Plaintiff's Allegations

Plaintiff's Complaint alleges as follows:

In the Fall of 2018, Plaintiff was in her second year of the nursing program ("Program") at Southwestern Community College ("SCC"). Doc. 1-2 at ¶ 1.

At the time, nursing students were required to pass a math test to remain in the Program. Specifically, students were required to score no less than 90% and could take the test no more than twice; a student who failed to pass the test on the second attempt was dismissed from the Program. Id. at ¶ 2.

Plaintiff took the test on August 23, 2018 and again on September 13, 2018, scoring 80% each time.

On or about October 16, 2018, Plaintiff was dismissed from the Program by Dr. Thom Brooks, the Executive Vice President of Instruction and Student Services at SCC. Id. at ¶¶ 3, 5.

Plaintiff alleges that nursing education programs in North Carolina are regulated by the North Carolina Board of Nursing ("Board of Nursing") and that a North Carolina administrative code regulation prohibits nursing programs from using standardized external exams to measure the ability of nursing students to progress toward graduation in a program leading to an initial nursing license. Id. at ¶ 5.

Plaintiff alleges that SCC used an external service, called ATI, that provided standardized questions for the tests in SCC's curriculum. Id. at ¶ 4.

After Plaintiff became aware of the Board of Nursing's prohibition on using standardized external examinations, Plaintiff corresponded with ATI, whose representatives confirmed that exam questions pulled from ATI's test

3

bank are considered "standardized" and cannot be customized. Accordingly, Plaintiff contends that SCC was prohibited from using ATI's standardized test questions to create the math test that Plaintiff took. Id. at ¶¶ 6, 7, 8.

Plaintiff appealed her dismissal from the Program through SCC's internal appeals process. In November 2018, and while Plaintiff's appeal was pending, a team from the Board of Nursing visited SCC to review complaints about the Program's curriculum and testing practices. Id. at ¶ 9.

Plaintiff is informed and believes that the review team met with Dr. Brooks, Dr. Mitch Fischer, who was the Dean of Health Science at SCC, and Wendy Buchanan, who was the director of the Program, as well as with other persons. Id. at ¶ 10.

Almost immediately after that visit, SCC changed the Program's "Progression Policy" so that the math test was no longer determinative of progression toward graduation. This policy change was implemented, Plaintiff alleges, "at least one full month prior to the conclusion of Plaintiff's internal appeals process in January 2019." Id. at ¶ 11.

At each step in her internal appeal, Plaintiff raised the issue of using standardized external examinations with Dr. Fisher, Dr. Brooks, and Dr. Don Tomas, who is the President of SCC and who Plaintiff alleges knew that this practice "was illegal." Id. at ¶ 12.

Nonetheless, Dr. Fisher, Dr. Brooks, and Dr. Tomas affirmed Plaintiff's dismissal from the Program, which became final in January 2019. Id. at ¶ 14.

Plaintiff also alleges that she brought SCC's attention to another problem with the math test – namely, that the stated answer to one of the test questions was incorrect – and that Plaintiff had supplied the correct answer. SCC, however, did not address this issue during Plaintiff's internal appeal either, though had Plaintiff been properly credited with providing the correct answer to the question, she would have scored a 90% on the math test (and presumably would have passed it). Id. at ¶¶ 15, 16.

Finally, Plaintiff filed a Post-Secondary Education Complaint on or about September 1, 2020. Her complaint was received by the University of North Carolina System Office in Chapel Hill and was referred to the North Carolina Community College System Office in Raleigh for review and determination. Id. at ¶ 17.

On November 2, 2020, Dr. John Evans of the Community College System Office informed Plaintiff that "her external administrative appeal was not sustained" and that, in his view, SCC had followed its internal appeal procedures. He concluded his message, which was delivered by email, by stating that there was no further action for the Community College System to take in Plaintiff's case. Id. at ¶ 18.

During and after her dismissal from the Program, Plaintiff requested a letter of recommendation that would have allowed her to transfer immediately into a nursing program at another school. However, the Director of the Program refused to provide such a letter, which caused Plaintiff to miss that year's enrollment window at other schools. Id. at ¶ 19. Though Plaintiff did eventually enroll in another nursing program, the credits she had accumulated at SCC had become stale and she was not able to transfer them to the other program, a situation that forced Plaintiff to incur additional time and expense to retake those courses at the other institution. Id. at ¶ 20.

Plaintiff alleges that she continued to investigate SCC's practices and discovered numerous other incidents involving similarly situated students "who did not achieve a passing score on an end of semester grade and should have been dismissed pursuant to SCC's policies." Id. at ¶ 21. Plaintiff is informed and believes, however, that those students were allowed to remain in the Program. Id. at ¶ 22.

In addition, Plaintiff is informed and believes that four (4) students, who enrolled the year following Plaintiff's dismissal, were caught cheating on assignments and were allowed to continue in the Program. Id. at ¶ 22.

The Complaint asserts the following claims:

1. Violation of the North Carolina and the United States Constitutions – Due Process;

2. Violation of the North Carolina and the United States Constitutions – Equal Protection; and

3. Injunction.

Defendants have moved to dismiss all claims.

## III.   Legal Standard

When considering a motion made pursuant to Rule 12(b)(6), the court, accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff, determines "whether the complaint on its face states plausible claims upon which relief can be granted." Francis v. Giacomelli, 588 F.3d 186, 189, 192 (4th Cir. 2009); accord Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009).

The court, however, is not required to accept "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement." Consumeraffairs.com, 591 F.3d at 255; see Giacomelli, 588 F.3d at 192.   That is, while "detailed factual allegations" are not required, the complaint must contain "enough facts to state a claim to relief that is plausible on its face."   Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007); accord Consumeraffairs.com, 591 F.3d at 255. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

7

inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009); <u>accord</u> <u>Consumeraffairs.com</u>, 591 F.3d at 255. In short, the well-pled factual allegations must move a plaintiff's claim from conceivable to plausible. <u>Twombly</u>, 550 U.S. at 570; <u>Consumeraffairs.com</u>, 591 F.3d at 256.[1]

## IV. Discussion

### A. Constitutional Claims

Plaintiff's Complaint indicates that her due process and equal protection claims are being asserted under both the United States Constitution and the North Carolina Constitution.

"Article I, Section 19 of the North Carolina Constitution guarantees both due process rights and equal protection under the law by providing that no person shall be 'deprived of his life, liberty, or property, but by the law of the land' and that 'no person shall be denied the equal protection of the laws.'" <u>Rhyne v. K-Mart Corp.</u>, 358 N.C. 160, 180, 594 S.E.2d 1, 15 (2004) (quoting N.C. Const. art. I, § 19). This provision "has been interpreted as being similar to the due process clause of the Fourteenth Amendment to the Federal Constitution." <u>Doe v. Charlotte-Mecklenburg Bd. of Educ.</u>, 222 N.C. App. 359,

---

[1] Though the Motion to Dismiss references dismissal under Rules 12(b)(1), 12(b)(2), and 12(b)(6) of the Federal Rules of Civil Procedure, Defendants' arguments appear to be made primarily pursuant to Rule 12(b)(6).

8

371, 731 S.E.2d 245, 253 (2012) (citing <u>Rhyne v. K-Mart Corp.</u>, 358 N.C. 160, 180, 594 S.E.2d 1, 15 (2004)).

Therefore, this memorandum references federal law in analyzing Plaintiff's constitutional claims.

### 1. Due Process

#### a. Procedural Due Process

To state a claim for a procedural due process violation, a plaintiff "must show '(1) a cognizable liberty or property interest; (2) the deprivation of that interest by some form of state action; and (3) that the procedures employed were constitutionally inadequate.'" <u>Kendall v. Balcerzak</u>, 650 F.3d 515, 528 (4th Cir. 2011) (citation omitted).

##### i. Property Interest

Defendants argue that Plaintiff has failed to demonstrate the existence of a property right. Specifically, Defendants contend that it is "uncertain if plaintiff has a constitutional property interest in remaining in SCC's nursing program," that Plaintiff bears the burden of establishing the existence of such a right, and that Plaintiff has made only an unsupported and conclusory allegation of a property interest. Doc. 4 at 5.

In response, Plaintiff argues that the United States Supreme Court "has assumed, without deciding, that university students possess a 'constitutionally protectable property right' in their continued enrollment in a university," Doc.

5 at 7, and therefore her pleading satisfies the first element of the due process analysis. Id. at 8.

In certain cases, the Supreme Court and the Fourth Circuit have assumed the existence of a property right to continued enrollment in the context of higher education. However, those assumptions have been made in cases where other considerations were dispositive of the claims at issue. See Regents of Univ. of Mich. v. Ewing, 474 U.S. 214, 223 (1985) ("even if Ewing's assumed property interest gave rise to a substantive right under the Due Process Clause to continued enrollment free from arbitrary state action, the facts of record disclose no such action"); see also Sheppard v. Visitors of Va. State Univ., 993 F.3d 230, 239 (4th Cir. 2021) (citations omitted) (explaining that "[t]he Supreme Court has [only] assumed, without actually deciding, that university students possess a constitutionally protectible property right in their continued enrollment in a university" and that the Fourth Circuit has followed the same approach) (quoting Tigrett v. Rector & Visitors of Univ. of Va., 290 F.3d 620, 627 (4th Cir. 2002) (modification of language in Sheppard).

In this case, as described below, Plaintiff has made sufficient factual allegations to overcome the Motion to Dismiss for purposes of the second and third elements of the procedural due process analysis. Therefore, the question of whether a property right to continued enrollment has been properly alleged must be addressed directly. See Doe v. Alger, 175 F.Supp.3d 646, 656 (W.D.

Va. 2016) (noting that the Supreme Court and the Fourth Circuit have assumed a liberty or property interest exists "and then gone on to find that the process at issue was constitutionally adequate" but that the court could not take that approach because the plaintiff had "alleged sufficient facts to state that the process he received was inadequate" and concluding that the court must decide "whether the amended complaint sufficiently alleges a property or liberty interest (or both)").

"Because the Constitution protects rather than creates property interests, the existence of a property interest is determined by reference to 'existing rules or understandings that stem from an independent source such as state law.'" Phillips v. Wash. Legal Found., 524 U.S. 156, 164 (1998) (quoting Bd. of Regents of State Colls. v. Roth, 408 U.S. 564, 577 (1972)); see also Equity in Athletics, Inc. v. Dep't of Educ., 639 F.3d 91, 109 (4th Cir. 2011) ("A protected property interest cannot be created by the Fourteenth Amendment itself, but rather must be created or defined by an independent source").

In her Complaint, Plaintiff alleges that she "enjoyed a property interest in continuing her enrollment at SCC through graduation." Doc. 1-2 at 9. Plaintiff also cites 21 N.C.A.C. §36.0321(p), which states:

> (p) External standardized examinations shall not be used to determine a student's progression or

graduation in a nursing education program preparing students for initial nurse licensure.

21 N.C. Admin. Code 36.0321.

Finally, Plaintiff alleges that she "discovered numerous other incidents involving similarly situated nursing students who did not achieve a passing score on an end of semester grade and should have been dismissed *pursuant to SCC's policies.*…" Doc. 1-2 at ¶ 21 (emphasis added).

State administrative regulations are among the types of provisions that can create property rights. See Bowens v. N.C. Dep't of Hum. Res., 710 F.2d 1015, 1017 (4th Cir. 1983) ("The Supreme Court has ruled that property rights can be created by administrative regulations and that the 'sufficiency of the claim of entitlement must be decided by reference to state law'") (quoting Bishop v. Wood, 426 U.S. 341, 344 (1976)). However, while Plaintiff has *cited* 21 N.C.A.C. §36.0321(p), she has not *explained* why it should be interpreted as creating a property interest that would be protected by the due process guarantees of the United States Constitution and the North Carolina Constitution. Cf. Bowens, 710 F.2d at 1018 (concluding that regulations which contained procedural and substantive guarantees expressly limiting the reasons for and means by which a provider may be terminated from the North

Carolina medicaid program created a property interest in provider's continued participation in the program unless terminated for cause).[2]

Further, although one district court within the Fourth Circuit has found that allegations regarding a school's policies were sufficient to allege the existence of a property right at the motion to dismiss stage, see Doe v. Alger, 175 F.Supp.3d 646, 656-57 (W.D. Va. 2016), Plaintiff's generalized allegation is distinguishable. In Alger, the plaintiff alleged, based on a university's policies and practices, as well as a student rights policy, that the university had "a system of expelling, suspending, or dismissing students only after a finding of cause." Id. at 658. Here, Plaintiff's allegation that nursing students who did not have a passing "end of semester grade" were allowed to remain in the Program does not describe regular and routine conduct by SCC—such as the systemic conduct in Alger—that could be interpreted as creating a property interest for Plaintiff. See Doe v. Va. Polytechnic Inst. & State Univ., 400 F.Supp.3d 479, 500 (W.D. Va. 2019) (comparing Alger, in which the Plaintiff alleged his university had a "system of expelling, suspending, or dismissing students only after a finding of cause" and pointed to a student rights policy

_____

[2] Plaintiff did not amend her Complaint as a matter of course upon the filing of the Motion to Dismiss and has not subsequently requested leave to amend.

indicating as much, and explaining that where "even those sparse allegations" were missing, plaintiff failed to allege a property interest adequately).[3]

Therefore, even taking the factual allegations in the light most favorable to Plaintiff, Plaintiff has not sufficiently pled the existence of a property right. See Sheppard v. Visitors of Va. State Univ., 993 F.3d 230, 239 (4th Cir. 2021) (citations omitted) ("Sheppard must show 'a state created property interest in continued enrollment at a public education institution exists in Virginia'").

## ii. Deprivation Without Due Process

To prevail on a procedural due process claim, a plaintiff must also demonstrate that she has been deprived of her property or liberty interest without due process of law. Kendall, 650 F.3d at 528; see also Prieto v. Clarke, 780 F.3d 245, 248 (4th Cir. 2015) ("To state a procedural due process violation, a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process of law").

As Plaintiff has not successfully alleged a property right, it is not necessary to reach the question of whether the process she received was sufficient. See e.g., Prieto, 780 F.3d at 248 ("Because we conclude that Prieto cannot establish a protected liberty interest, we need not consider the

---

[3] In her Complaint, Plaintiff also alleges that SCC maintained an improper policy of using standardized exam questions. That is, she argues that the school's policy was to use the standardized exam questions and that such policy violated her rights. However, she does not contend that the policy itself created any property rights.

sufficiency-of-process requirement"). Nonetheless, this memorandum addresses this additional issue in the alternative.

Defendants argue briefly that even if Plaintiff had a property interest, her claim should still fail since she admits that she utilized and exhausted both the internal and external appeals processes. Doc. 4 at 6.

"'The fundamental requisite of due process of law is the opportunity to be heard.'" Goss v. Lopez, 419 U.S. 565, 579 (1975) (quoting Grannis v. Ordean, 234 U.S. 385, 394 (1914)). However, determining the process required in each case is not a task that can be accomplished with simple reference to universally applicable procedures. Bd. of Curators of Univ. of Mo. v. Horowitz, 435 U.S. 78, 86 (1978) (quoting Cafeteria & Rest. Workers Union, Local 473 v. McElroy, 367 U.S. 886, 895 (1961) (internal quotes omitted) ("The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation").

The Supreme Court has noted that this "need for flexibility is well illustrated by the significant difference between the failure of a student to meet academic standards and the violation by a student of valid rules of conduct" and that "[t]his difference calls for far less stringent procedural requirements in the case of an academic dismissal." Id.; see also id. at 89 ("Academic evaluations of a student, in contrast to disciplinary determinations, bear little

resemblance to the judicial and administrative fact-finding proceedings to which we have traditionally attached a full-hearing requirement").

Here, to the extent Plaintiff had a property interest in continued enrollment, Plaintiff was afforded some process in connection with her dismissal from the Program; she participated in SCC's internal appeals process and filed an external administrative appeal with the Community College System.

However, Plaintiff has alleged that her dismissal from the Program was based solely on her failure to achieve an 80% score on the math test which itself utilized standardized questions in violation of the Board of Nursing's requirements and, significantly, that Plaintiff's appeal was rejected and she was dismissed from the Program even though SCC personnel were made aware of these issues while Plaintiff's appeal was pending.

The undersigned is persuaded that these allegations are sufficient to overcome Defendant's Motion to Dismiss with respect to the requirements of the second and third elements of a procedural due process claim.

### b. Substantive Due Process

A successful substantive due process claim must demonstrate "(1) that [Plaintiff] had property or a property interest; (2) that the state deprived [Plaintiff] of this property or property interest; and (3) that the state's action falls so far beyond the outer limits of legitimate governmental action that no

process could cure the deficiency." Tri Cnty Paving, Inc. v. Ashe Cnty., 281 F.3d 430, 440 (4th Cir. 2002).

"Substantive due process is a far narrower concept than procedural; it is an absolute check on certain governmental actions notwithstanding 'the fairness of the procedures used to implement them.'" Love v. Pepersack, 47 F.3d 120, 122 (4th Cir. 1995) (citations omitted). A substantive due process violation has occurred only when the state action at issue is "so arbitrary and irrational, so unjustified by any circumstance or governmental interest, as to be literally incapable of avoidance by any pre-deprivation procedural protections or of adequate rectification by any post-deprivation state remedies." Rucker v. Harford Cnty., 946 F.2d 278, 281 (4th Cir. 1991), cert. denied, 502 U.S. 1097, 112 S.Ct. 1175, 117 L.Ed.2d 420 (1992).

Here, Plaintiff's Complaint contains a single claim for violations of "due process," though it does mention both substantive due process and procedural due process briefly. See Doc. 1-2 at ¶ 28 (referencing "lack of rational-decision-making necessary to protect Garrett's procedural due process rights") and ¶ 29 (referencing harm to Plaintiff's substantive due process rights).

In briefing the Motion to Dismiss, both sides reference substantive due process, though neither side develops arguments about that claim. See Doc. 4 at 6 and Doc. 5 at 10-11.

Given the brevity of the parties' written submissions on this topic, the undersigned will recommend that any substantive due process claim be treated similarly to Plaintiff's procedural due process claim. See Davis v. George Mason Univ., 395 F. Supp. 2d 331, 336 (E.D. Va. 2005), aff'd, 193 F. App'x 248 (4th Cir. 2006) (Without an underlying state created property interest, "Plaintiff does not state a claim for violations of procedural or substantive due process").

### 2. Equal Protection

"The Equal Protection Clause of the Fourteenth Amendment requires 'that all persons similarly situated should be treated alike.'" Nofsinger v. Va. Commonwealth Univ., 523 Fed. Appx. 204, 205 (4th Cir. 2013) (quoting City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985)).

"To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination. Once this showing is made, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny." Morrison v. Garraghty, 239 F. 3d 648, 654 (4th Cir. 2001)(citations omitted).

In this case, Plaintiff alleges that she has discovered numerous other incidents in which students "who did not achieve a passing score on an end of

semester grade and should have been dismissed pursuant to SCC's policies" were allowed to remain in the Program. Doc. 1-2 at ¶ 21. In her briefing, Plaintiff argues that she has alleged "she was dismissed from Defendants' nursing program for failing to achieve a passing grade on a math test when other similarly situated nursing students, enrolled at the same time and in the same program, also allegedly violated the same academic progression policy but were not dismissed." Doc. 5 at 13.

These allegations, however, do not sufficiently demonstrate that Plaintiff and these other students were "similarly situated." Plaintiff clearly articulates that she was dismissed for failing a math test that she contends was improper, but she does not state that the other students were allowed to remain in the Program despite failing the same math test. Rather, Plaintiff alleges that the other students "did not achieve a passing score on an end of semester grade" (which presumably could have been associated with any academic class) or "violated the same academic progression policy" (though she does not define the "progression policy" as applying solely to the math test).

In addition, even if Plaintiff is presumed to argue that both she and the other students failed the math test and that only she was dismissed from the Program, her equal protection claim remains deficient as she does not allege that Defendants intentionally and purposefully discriminated between Plaintiff and the other students. See Stewart v. Bland, 2:07cv512, 2007 WL

5787613 (E.D. Va. Dec. 7, 2007) (dismissing equal protection claim for failure to state a claim because plaintiff "cannot base an equal protection claim solely on a personal belief that he was a victim of discrimination").

Accordingly, the undersigned will recommend that Plaintiff's equal protection claim be dismissed.

### 3.　Qualified Immunity

Defendants also argue that they are entitled to qualified immunity from suit in their personal capacities.

A plaintiff's claims will survive a qualified immunity challenge if (1) a constitutionally protected right was violated and (2) "the right violated was clearly established." <u>Tobey v. Jones</u>, 706 F.3d 379, 385 (4th Cir. 2011). Courts may evaluate the two factors in either order. <u>Pearson v. Callahan</u>, 555 U.S. 223, 236 (2009).

In this case, even if it is assumed that Plaintiff has sufficiently pled that she has a property right to her continued enrollment in the Program, she has not sufficiently alleged that such a right was "clearly established." <u>See Sheppard v. Visitors of Va. State Univ.</u>, 993 F.3d 230, 240 (4th Cir. 2021) (noting that the Supreme Court had only assumed, without actually deciding, that university students possess a constitutionally protected property right in their continued enrollment and stating that "[t]he Supreme Court and this

Court's assumptions, without express recognition, hardly amount to a clearly established right").

Therefore, the undersigned will recommend that Plaintiff's claims against Defendants in their personal capacities be dismissed as barred by qualified immunity.

### B. Other Remedies

Plaintiff also requests injunctive relief as well as punitive damages. Considering the recommended disposition of Plaintiff's constitutional claims, the undersigned will recommend that Plaintiff's requests for these additional remedies also be denied.

## V.    Recommendation

For the reasons set forth herein, the undersigned respectfully **RECOMMENDS** that the Motion to Dismiss (Doc. 3) be **GRANTED** and Plaintiff's claims be **DISMISSED**.

Signed: October 14, 2021

W. Carleton Metcalf
United States Magistrate Judge

21

## Time for Objections

The parties are hereby advised that, pursuant to Title 28, United States Code, Section 636, and Federal Rule of Civil Procedure 72(b)(2), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the presiding District Judge will preclude the parties from raising such objections on appeal. See <u>Thomas v. Arn</u>, 474 U.S. 140, 140 (1985); <u>United States v. Schronce</u>, 727 F.2d 91, 94 (4th Cir. 1984).